UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

SHERYL ANN MCCARTNEY,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

    Defendant.

Case No. 1:14-cv-131-JVB-SLC

## OPINION AND ORDER

Plaintiff Sheryl McCartney seeks judicial review of the Defendant's decision to deny her social security disability benefits. Administrative Law Judge L. Raquel BaileySmith issued a decision unfavorable to Plaintiff on November 21, 2012. (R. 29.) That decision became the final decision of the Defendant Commissioner of Social Security when the Social Security Appeals Council denied Plaintiff's request for review in February 2014.

For the reasons discussed below, the case is REMANDED to the agency for reconsideration consistent with this Opinion.

**A.    Overview of the Case**

Plaintiff was 44 years old as of her alleged onset date of disability, and 49 years old on the day the ALJ issued her decision. (R. 28–29.) She was insured for disability benefits through December 31, 2013, and she would have been 50 years old on her date last insured. (R. 16.)

The ALJ found that Plaintiff suffers from ten impairments, nine severe and one non-severe. (R. 16.) Despite these conditions, the ALJ concluded that Plaintiff retained a residual

functional capacity to perform a limited range of sedentary work. (R. 19.) At the ALJ hearing, the vocational expert testified that a hypothetical individual matching Plaintiff's age, work experience, and residual functional capacity could not work in any of Plaintiff's prior jobs. (R. 28, 55.) The vocational expert testified that the individual could perform other jobs, such as a surveillance system monitor, a packer, and an unskilled inspector. (R. 29, 55–56.) Relying on the vocational expert's testimony, the ALJ found that Plaintiff was able to do "other work that exists in significant numbers in the national economy" and that she was therefore not disabled. (R. 29.)

**B.      Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**C.      Disability Standard**

To qualify for disability benefits, the claimant must establish that she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) she is not presently employed; (2) her impairment is severe; (3) her impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) she is not able to perform her past relevant work; and (5) she is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.    Analysis**

Plaintiff presents two challenges to the residual functional capacity determination and two challenges to the ALJ's assessment of her credibility. One of Plaintiff's residual functional capacity arguments is successful and requires the Court to remand this case to the agency. While her other arguments may not have merited remand standing alone, the agency is encouraged to reconsider those issues as discussed below.

**(1)    *ALJ failed to address potential limiting effects of Plaintiff's cervical spine impairments***

Plaintiff argues that the ALJ should have included limitations related to her cervical spine impairments in the residual functional capacity. The Commissioner responds that the ALJ correctly concluded that Plaintiff's cervical spine impairments were non-severe and did not require additional limitations. However, the record and the ALJ's decision demonstrate that Plaintiff's cervical spine impairments were likely a severe impairment, and that the ALJ failed to either include limitations addressing the impairments or to explain why they were unnecessary.

Ignoring a severe impairment in assessing the residual functional capacity requires remand. While an ALJ is not required to discuss every piece of evidence, she must "provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (internal quotation omitted). Severe impairments, by definition, significantly limit a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1505(a) & 404.1520(c). An ALJ must consider the limiting effects of all severe and non-severe impairments in determining the residual functional capacity. 20 C.F.R. § 404.1545(e).

In this case the ALJ should have provided some additional restrictions in the residual functional capacity related to Plaintiff's pain and limited range of motion in her neck, or an explanation for why additional limitations were unwarranted. Plaintiff's severe impairments included "myofascial pain syndrome" and "pain syndrome," either of which may implicate neck impairments. (R. 16.) Plaintiff's neck pain may be properly considered within myofascial pain syndrome because the consultative examiner, Abdali Jan, M.D., reported that she displayed signs and symptoms of "*cervical* thoracic myofascial pain syndrome." (R. at 373 (emphasis added).) William Hedrick, M.D., also reported an impression of cervical thoracic myofascial pain

syndrome. (R. 464, 467, 476, 479.) Myofascial pain syndrome is not attached to a diagnosis involving any other part of Plaintiff's body besides her neck (cervical) and upper back (thoracic).

Despite the Commissioner's assertion that no medical evidence supported Plaintiff's subjective complaints of neck pain, there is clinical evidence in the record consistent with Plaintiff's symptoms, and no medical evidence that is inconsistent with her complaints. Moreover, the agency's regulations prevent the agency from discrediting a claimant's account of her pain solely based on the lack of objective medical evidence. 20 C.F.R. § 404.1529(c)(2). Specifically, Dr. Jan recorded that Plaintiff's cervical spine range of motion was less than normal in all four categories.[1] (R. 374.) His impression was that Plaintiff suffered from cervical thoracic myofascial pain syndrome. (R. 373.) Yet, Dr. Jan noted that Plaintiff has "full range of motion of the cervical spine, without pain" (R. 372), and the Commissioner relies on this statement while ignoring the conflicting signs that Dr. Jan recorded and attested to recording.

Additionally, Dr. Hendrick's notes indicate that Plaintiff experienced an increasing level of neck pain. She first reported her neck pain at 3, up to 10, out of 10 in May 2011. (R. 475, 630.) Dr. Hendrick consistently reported that an exam of Plaintiff's cervical spine revealed positive tests for cervical facet loading on the right side, cervical facet tenderness on both sides, cervical myofascial tenderness on both sides, and six trigger points (scalene, levator scapula, and trapezius on both sides); and a negative Spurling's test. (R. 476, 480, 483, 486.)

Most recently, in November 2012, Kam Teeter, N.P., noted that Plaintiff reported pain at 7 out of 10, and that her cervical exam revealed similar clinical findings to Dr. Hendrick's, with painful range of motion but no crepitus. (R. 633.)

---

[1] According to the American Association of Orthopedic Surgeons, the normal range of motion for the four categories is as follows: flexion, 50 degrees; extension, 60 degrees; lateral flexion, 45 degrees to both sides; and rotation, 80 degrees in both directions. (R. 374.) Dr. Abdali Jan's attested that Plaintiff's active range of motion was: flexion, 45 degrees (5 less than normal); extension, 35 degrees (25 less than normal); lateral flexion, 25 to the right and 15 to the left (20 and 30 less than normal); and rotation 60 degrees in each direction (20 less than normal). (*Id.*)

5

The case must be remanded because the Court cannot trace the ALJ's logic between the finding that Plaintiff's myofascial pain syndrome was severe and the lack of limitations in the residual functional capacity related to myofascial pain syndrome. Additional limitations for neck impairments may not be required, but if that is the case, then the ALJ should explain how the residual functional capacity already accounts for this severe impairment to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Craft*, 539 F.3d at 673 (internal citation omitted).

**(2)** *The agency should consider reweighing Plaintiff's credibility*

Plaintiff argues that the ALJ's credibility analysis was flawed because it overemphasized her daily activities and failed to give the proper weight to her strong work history. As stated above, these two arguments would not have succeeded if the ALJ's decision sufficiently addressed Plaintiff's neck pain. However, because the case is being remanded the agency should also reconsider Plaintiff's credibility, especially her statements regarding the intensity and persistence of her pain.

The credibility analysis was not so flawed that it would require remand, but there are enough flaws present that it may merit reconsideration. The ALJ discredited Plaintiff's allegations of pain because they were not supported by objective medical evidence or her treatment history and medications. (R. 24–25.) This evaluation complied with the agency's regulations because it did not discredit Plaintiff's statements about the intensity of her pain solely on the lack of supporting objective evidence. *See* 20 C.F.R. § 404.1529(c)(2) (stating that agency will not reject claimant's statements about pain solely because available medical evidence does not substantiate the statements).

However, two areas of credibility analysis, in particular, toe the line between permitted analysis and error requiring remand. First, the ALJ found Plaintiff less credible about the extent of her pain because she did not follow a diet and exercise program recommended by her doctors. (R. 25.) Failure to follow prescribed treatment can be a valid reason for discrediting a claimant's statements. SSR 96-7p, 1996 WL 374186 at *7 ("[T]he individual's statements may be less credible . . . if the medical [records] show that [she] is not following the treatment as prescribed and there are no good reasons for this failure."). But, that analysis would have required remand if it were the only basis for discrediting Plaintiff's credibility because the ALJ then should have inquired as to why Plaintiff failed to follow some recommended treatment options. *See id.* ("The [ALJ] may need to . . . question the individual at the [hearing] in order to determine whether there are good reasons [for the failure]."). It should have occurred to the ALJ that someone suffering from several severe pain disorders (involving her feet, left knee, back, and neck) may encounter some difficulty with exercising, and if the ALJ had asked, Plaintiff may have given a good explanation for the perceived failure.

The second part of the credibility analysis that raises some questions is the ALJ's statement that Plaintiff worked for several years after her diagnosis of fibromyalgia. (R. 25.) This would not have required remand by itself, but it runs dangerously close to using Plaintiff's "'can do' attitude against [her] during [her] pursuit for disability benefits." *Springer v. Colvin*, No. 1:13-cv-185, 2014 WL 3075342 at *8 (N.D. Ind. Jul. 2, 2014). Similar to the court's reasoning in *Springer*, the agency is urged, but not required, to reconsider Plaintiff's credibility on remand.

**(3)**     ***Sit-stand option was permissible, but may be clarified on remand***

Plaintiff argues that the ALJ failed to include the frequency that she would need to change positions between sitting and standing in the residual functional capacity. But, the ALJ's limitation that she "must be allowed to alternate between sitting and standing while remaining on task" reasonably implies that she could change position "at will" as long as she stayed on task. This satisfies the requirements of the agency's regulations and rulings, but as long as the case is being remanded, the agency may want to revisit this part of the residual functional capacity and explicitly provide a frequency.

**(4)** *Agency should consider Plaintiff's age on remand*

There was no error in the ALJ's decision regarding Plaintiff's age, but between the date of the ALJ's decision and her date last insured, Plaintiff turned 50 years old. Therefore, the agency should consider the effect of her age on her ability to adjust to other work in light of 20 C.F.R. § 404.1563(d), if applicable.

SO ORDERED on April 27, 2015.

    S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE